# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1079

_____

United States of America,          *
                                   *
          Plaintiff – Appellee,    *
                                   *
v.                                 *
                                   *
Federico Villanueva Aleman,        *
                                   *
          Defendant – Appellant.   *
                                   *


_____

No. 08-1173          Appeals from the United States
                     District Court for the
_____          District of Minnesota.


United States of America,                    *
                                             *
          Plaintiff – Appellee,              *
                                             *
v.                                           *
                                             *
Hector Martinez-Menera, formerly             *
known as Hector Martinez Manera,             *
formerly known as Hector Manera              *
Martinez,                                    *
                                             *
          Defendant - Appellant.             *

No. 08-2115

_____

United States of America,       *
        *
     Plaintiff – Appellee,    *
        *
     v.        *
        *
Jack Marvin Yanka,      *
        *
     Defendant – Appellant.  *

_____

Submitted:  October 14, 2008
Filed:  December 8, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Federico Aleman, Hector Martinez, and Jack Yanka were indicted for conspiring to distribute methamphetamine.  Aleman and Yanka pled guilty.  Martinez went to trial and was convicted by a jury.  On their appeals, Aleman and Yanka raise sentencing issues.  On his appeal, Martinez claims that his statement to the police should have been suppressed, that the district court[1] erred by denying a continuance and giving a willful blindness instruction, and that the government failed to turn over materials due him and made prejudicial statements before the jury.  We remand Yanka's case for resentencing but otherwise affirm.

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

# I.

Through a wiretap on the telephone of a suspected methamphetamine dealer, Michael Cook, St. Paul police traced calls to a phone number used by Federico Aleman and Hector Martinez. Police began to watch the building they believed was associated with the phone number and in which Martinez had a duplex apartment. Officers saw Martinez and Aleman go in and out of the building several times on December 29, 2006. The next day the police intercepted a phone call between Cook and a man the police believed to be Aleman and heard them arrange for Cook to receive six ounces of methamphetamine. Immediately thereafter Aleman and Martinez left the apartment building in a truck driven by Martinez. The police stopped the truck and found approximately six ounces of methamphetamine on Aleman and over $6000 in cash on Martinez. A subsequent search of Martinez's apartment revealed drug packaging materials, approximately 224 grams of a substance containing methamphetamine, cutting agents, a scale, and another $1900 in cash. On the day after his arrest Aleman told police that Martinez had given him the methamphetamine he had when arrested, and this statement was included in the affidavit supporting the criminal complaint charging the two men.

The grand jury indicted Aleman and Martinez on charges of conspiracy to distribute and possess with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846 (Count 1); and aiding and abetting possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 18 U.S.C. § 2 (Count 2). Jack Marvin Yanka, a distributor for Michael Cook, was also indicted in the conspiracy count.

Aleman pled guilty to Count 2. Based on its finding that Aleman committed perjury at Martinez's trial, the district court imposed a two level enhancement for obstruction of justice and denied a reduction for acceptance of responsibility, resulting in an advisory guideline range of 151–188 months. Aleman was then sentenced to 154 months. Aleman appeals his sentence, arguing that the district court erred in finding that he committed perjury and in its application of the sentencing guidelines.

Yanka pled guilty to the conspiracy count. The district court determined that Yanka was a career offender but varied downward from the advisory guideline range of 235–262 months to impose a sentence of 120 months. Yanka appeals his sentence, arguing that he should not have been classified as a career offender because his prior predicate offense of Minnesota auto theft was not a crime of violence under U.S.S.G. § 4B1.2.

Martinez went to trial and a jury convicted him on both counts. He challenges his conviction on several grounds. He contends that the district court erred in denying his motion to suppress a statement he made to police following his arrest. He also claims that the government violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by not providing him with Aleman's post arrest statement prior to trial. He argues that the district court erred by not continuing the trial so a transcript of Aleman's statement could be produced, and that the district court improperly instructed the jury on willful blindness. He also alleges that the government violated its discovery obligations by not providing him with a statement made by his landlord prior to the pretrial hearing, and that the prosecutor and a government witness made prejudicial statements undermining the fairness of his trial.

## II.

The day after his arrest, Aleman told police that Martinez had given him the drugs he possessed at the time of his arrest. At Martinez's trial, however, Aleman testified that he had obtained the drugs from someone else and that Martinez knew nothing about the drug trafficking. When confronted on cross examination with his prior statement, Aleman said that he had lied to police during his post arrest interview in order to pin the blame on Martinez.

At Aleman's sentencing hearing, the district court found that he had committed perjury at the trial and applied a two level obstruction of justice enhancement. A district court makes factual findings underlying an obstruction of justice enhancement by a preponderance of the evidence, <u>United States v. Guel-Contreras</u>, 468 F.3d 517,

522 (8th Cir. 2006), and we review those findings for clear error, <u>United States v. Vickers</u>, 528 F.3d 1116, 1120 (8th Cir. 2008). We review de novo its application of the guidelines to those facts. <u>Id.</u> An obstruction of justice enhancement is proper if the defendant has testified falsely under oath, but the false testimony must relate to a material matter and be done willfully rather than out of confusion or mistake. <u>Id.</u> at 1122; U.S.S.G. § 3C1.1 cmt. n. 4(b) (2007). The district court determined that Aleman had lied at trial from his demeanor and the "patently incredible nature of some of [his] testimony" in light of other evidence about the trafficking operations and his association with Martinez. The district court also found that Aleman's perjury was knowing and willful and that it was material to the issue of Martinez's guilt. After our review of the record, we conclude that the district court did not err in imposing the obstruction of justice enhancement.

Aleman also argues that he was entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) because he entered a timely guilty plea and testified truthfully. The defendant bears the burden of showing that he accepted responsibility. <u>United States v. Canania</u>, 532 F.3d 764, 772 (8th Cir. 2008). We review for clear error a district court's denial of a reduction under § 3E1.1. <u>Id.</u>; <u>see also</u> U.S.S.G. § 3E1.1 cmt. n. 5. An obstruction of justice enhancement under § 3C1.1 "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct" as required for a § 3E1.1 reduction. <u>See</u> U.S.S.G. § 3E1.1 cmt. n. 4; <u>Guel-Contreras</u>, 468 F.3d at 523. There may be "extraordinary cases" in which a defendant could still be eligible for an acceptance of responsibility reduction, however. <u>See</u> U.S.S.G. § 3E1.1 cmt. n. 4; <u>United States v. Perez</u>, 270 F.3d 737, 739 (8th Cir. 2001). To determine whether a case is extraordinary, a district court should consider "the totality of the circumstances, including the nature of the [defendant's] obstructive conduct and the degree of [defendant's] acceptance of responsibility." <u>United States v. Honken</u>, 184 F.3d 961, 968 (8th Cir. 1999). We see no grounds for departing from the rule in this case where Aleman obstructed the prosecution of a related case by giving false testimony. <u>See</u> <u>United States v. Brown</u>, 539 F.3d 835, 841 (8th Cir. 2008). We conclude that the district court did not err in denying Aleman a reduction for acceptance of responsibility.

Aleman makes a cursory argument that his sentence was unreasonable because the district court did not accept the recommendation in the plea agreement and did not "follow" the sentencing factors listed in 18 U.S.C. § 3553(a). We review the reasonableness of a sentence under an abuse of discretion standard. United States v. Roberson, 517 F.3d 990, 993 (8th Cir. 2008). The district court imposed a sentence within the advisory guideline range, which is presumptively reasonable. United States v. Denton, 434 F.3d 1104, 1113 (8th Cir. 2006). It did so after a thorough discussion of the § 3553(a) factors. The recommended sentence in Aleman's plea agreement was conditional on his testifying truthfully at trial and continuing to accept responsibility. Based on the district court's findings that Aleman had not fulfilled these conditions, it was not unreasonable to reject the agreement's recommended sentence. We conclude that the sentence imposed was not unreasonable.

III.

Martinez appeals his conviction. Two of his claims relate to the post arrest statement of Federico Aleman in which he told the police that Martinez was the source of his drugs. Martinez knew about this statement because it was referred to in the criminal complaint, but he did not have access to a recording or transcript of the statement before trial. Martinez subpoenaed Aleman to testify at trial, and after the close of the government's case Aleman decided to waive his Fifth Amendment rights and testify. At that point the prosecutor gave Martinez the recording of Aleman's statement. Martinez contends that he should have received it earlier under Brady v. Maryland, and that the trial should have been continued to allow him more time to analyze it.

In order to show a violation of due process under Brady, Martinez must show that the prosecution suppressed evidence favorable to him that was "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. He must also show that there was a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995). Because Martinez did

not raise his Brady claim at trial we review for plain error. United States v. Shepard, 462 F.3d 847, 870 (8th Cir. 2006). To prevail on a plain error standard, Martinez "must show that the court committed an error that was plain, that affected his substantial rights, and that 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Davis, 538 F.3d 914, 917 (8th Cir. 2008) (quoting United States v. Olano, 507 U.S. 725, 732–36 (1993)).

The government contends that there was no Brady violation because Aleman's statement was not exculpatory or favorable to Martinez. See United States v. Roach, 28 F.3d 729, 734 (8th Cir. 1994). Martinez counters that the statement would have assisted his defense because in it Aleman refers to other individuals whom he could have investigated or called as witnesses. Brady does not cover evidence that would merely help a defendant prepare for trial but is otherwise immaterial to the issues of guilt or punishment. See United States v. Agurs, 427 U.S. 97, 112 n.20 (1976). Martinez only speculates that interviews of these other individuals would have provided evidence favorable to his defense, however, and "mere speculation . . . is not . . . sufficient to sustain a Brady claim." See United States v. Wadlington, 233 F.3d 1067, 1077 (8th Cir. 2000) (quotation omitted).

Martinez argues that Aleman's statement should have been disclosed earlier because it contained impeachment evidence. See United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995). Most of the examples in Martinez's brief are of how Aleman's trial testimony could have been contradicted using the prior statement, but Martinez does not explain how this would have helped his defense. Martinez does suggest that he might not have called Aleman to testify had he known the contents of the post arrest statement, but he was already aware from the complaint that the statement would conflict with Aleman's anticipated testimony about what Martinez knew about the drug operation. See Wadlington, 233 F.3d at 1076. Martinez also claims that Aleman's post arrest statement would have enabled him to impeach his landlord's testimony that he was the sole renter of the apartment because it referred to the presence of others at the apartment and knowing their names would have helped contradict the landlord's testimony on that point.

Even if Aleman's original statement could be viewed as exculpatory or containing useful impeachment evidence, Martinez must still show that "earlier disclosure might have enabled [him] to create a reasonable doubt that did not otherwise exist." United States v. Bledsoe, 674 F.2d 647, 670 (8th Cir. 1982). Martinez has not shown how this statement would have created a reasonable doubt regarding the verdict, given the abundant evidence of his involvement in the drug trafficking. See Johns v. Bowersox, 203 F.3d 538, 546 (8th Cir. 2000) (noting that other evidence implicating the defendant is relevant to materiality (citing Strickler v. Greene, 527 U.S. 263 (1999))). We conclude that there is no reasonable possibility that the jury would have come to a different conclusion about his guilt if Martinez had had access to Aleman's statement at an earlier time.

Martinez claims that the district court should have continued the trial to allow him more time to review Aleman's statement. After the government turned over Aleman's statement, the court excused the jury for the day and recessed for several hours to allow Martinez time to listen to the recording with the assistance of court interpreters. When the court reconvened at 3:45 p.m. Martinez's counsel stated that he had been unable fully to review the hour long recording because it contained simultaneous Spanish-English interpretation, and he wanted the court interpreters to provide their independent interpretation of Aleman's statement. He also wanted the interpreters to prepare a certified transcript, which he estimated would have required 65 to 75 hours.[2] Martinez did not formally move for a further continuance, but told the court that he needed additional time to prepare. The district court recessed the trial until the next morning. We review the district court's decision for abuse of discretion. See United States v. Young, 943 F.2d 24, 25 (8th Cir. 1991).

---

[2]A certified transcript was completed after the trial, and we grant Martinez's unopposed motion to supplement the appellate record with it. In that statement Aleman gives his personal history, discusses the possibility of cooperation, and describes the other individuals with whom he associated and how the deal was made with Michael Cook on December 30, 2006. Martinez never explains how the added facts in the statement were potentially exculpatory or how the verdict would have been affected had he had access to these facts before the trial.

-8-

When a district court is exercising its discretion to deny a continuance, it should consider the "time required and already permitted for trial preparation, diligence of the moving party, conduct of the other party, the effect of delay, and the reasons movant gives for needing a continuance." United States v. Ware, 890 F.2d 1008, 1010 (8th Cir. 1989). Here, the district court noted that Martinez had no entitlement to the recording of Aleman's statement under the Jencks Act, 18 U.S.C. § 3500, because Aleman had not testified for the government. See United States v. Price, 542 F.3d 617, 621 (8th Cir. 2008). Martinez's counsel stated that he believed Aleman's statement contained exculpatory material that he wanted more time to investigate. The court responded that counsel would have adequate opportunity to elicit any exculpatory content during his examination of Aleman. The continuance requested by Martinez on a Thursday would have required recess until the following Monday, and the district court expressed concerns about the extension of jury service and other scheduling conflicts. We conclude that the district court did not abuse its discretion in denying a further continuance based on its finding that Martinez's need for additional preparation time was not compelling.

Martinez also contends that the district court erred by giving a willful blindness instruction that the jury could find he "acted knowingly if it found beyond a reasonable doubt that [Martinez] was aware of a high probability that others distributed a controlled substance . . . and that [Martinez] deliberately avoided learning the truth." We review that decision for abuse of discretion. United States v. Gill, 513 F.3d 836, 849 (8th Cir. 2008). We will affirm so long as "the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001). A willful blindness instruction is proper if the evidence "support[s] the inference that the defendant was aware of a high probability of the existence of the fact in question *and* purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." United States v. Barnhart, 979 F.2d 647, 651 (8th Cir. 1992) (quoting United States v. Rivera, 944 F.2d 1563, 1571 (11th Cir. 1991)) (emphasis added).

Martinez's defense at trial was that he lacked any knowledge of the drug trafficking and that he was merely present when Aleman was engaged in it. The government argues that given the strong evidence linking Martinez to the drug dealing, Martinez could have lacked actual knowledge only by deliberately turning a blind eye. Moreover, Martinez was arrested with $6000 in cash on his person, in the company of Aleman, who had methamphetamine in his pocket. From Martinez's apartment, where he was the sole tenant, police officers recovered more drugs, drug paraphernalia, and $1900 in cash. We also reject Martinez's argument that the willful blindness instruction created a risk that the jury would convict him based on a finding of mistake or negligence. See United States v. Whitehill, 532 F.3d 746, 752 (8th Cir. 2008). We conclude that the district court did not abuse its discretion in instructing the jury on willful blindness.

Next, Martinez contends that the government should have disclosed before his pretrial hearing a statement by his former landlord that he had been the sole renter of his apartment in December 2006. The government had produced this statement to Martinez three days before trial, as ordered by the district court upon Martinez's motion for early disclosure of materials subject to the Jencks Act. Martinez asserts that the government's failure to disclose this statement even earlier "mislead [sic] [him] into believing he did not have standing to challenge the search warrant." Martinez did not raise this claim before the district court so we review for plain error. We reject Martinez's suggestion that he was misled. Martinez knew that he lived in the apartment at the time of the search and did not need his landlord's corroboration of this fact to inform him of his standing to challenge the search. Furthermore, the government was not required under either Brady or the Jencks Act to disclose Sanchez's statement before the pretrial hearing. The government's disclosure of this statement three days before trial did not impair any substantial right of Martinez.

Martinez claims that the district court erred by not suppressing certain portions of his post arrest statement under Miranda v. Arizona, 384 U.S. 436 (1966). This challenge is moot because the government did not use any part of his statement at the trial. See United States v. Christenson, 549 F.2d 53, 57 n.2 (8th Cir. 1977) (holding

that because the fruits of allegedly illegal searches were not offered into evidence by the government, "there is nothing upon which the exclusionary rule can operate"). Martinez contends the issue is not moot because the government could use the statement if his case were to be retried. If there were ever a retrial, however, Martinez could renew his challenge at such time.

Finally, Martinez argues that improper statements made by the prosecutor and a government witness undermined the fairness of his trial. Martinez asserts that case agent Matthew Parker made unwarranted racial assumptions linking Martinez to the conspiracy. Since Martinez did not object to Parker's statements, we review for plain error. United States v. Hyles, 521 F.3d 946, 958 (8th Cir. 2008). To obtain a reversal based on the statement of a witness, Martinez must show that it was error for the district court to allow those statements, that the error was of constitutional dimension, and was not harmless beyond a reasonable doubt. See United States v. Vue, 13 F.3d 1206, 1212–13 (8th Cir. 1994) (reversing conviction based on extensive testimony tying the defendants' ethnic background to a particular type of drug trade). During his direct examination Parker made several references to voices heard on the wiretap speaking in broken English with a Hispanic accent, and also to an "unknown Hispanic female" heard on the wiretap. Parker's testimony only referred to factors used to identify a suspect during an investigation and was not extensive or of a prejudicial nature. The district court did not err in allowing Parker's testimony.

Martinez contends that the prosecutor's remark during closing argument that "these guys know how to play the game" invited the jury to speculate about nationality and race.[3] Improper prosecutorial remarks during closing argument may be grounds for reversing a conviction if they "prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." United States v. Boone, 437 F.3d 829, 841 (8th Cir. 2006). District courts have broad discretion in controlling

---

[3]Martinez also asserts that the prosecutor made a similar remark during the government's opening statement, but the citation Martinez provides does not contain any such reference.

-11-

closing arguments, and we review the district court's overruling of Martinez's objection for abuse of discretion. United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000). Martinez has identified only a single possible reference to race or nationality. During closing the prosecutor said "these guys know how to play the game" while referring to Martinez having four identification cards in his wallet. When overruling the objection, the district court concluded that "these guys" was simply a reference to Martinez and Aleman, and that "no reasonable person would have interpreted [the prosecutor] saying it [to refer generally to Mexicans]." We conclude that the prosecutor did not make an improper reference to Martinez's race or nationality and that the statement was not prejudicial. The district court did not abuse its discretion in overruling Martinez's objection.

In sum, we determine that Martinez has not shown that the district court committed any error during his trial nor that the government improperly withheld evidence or made inappropriate statements.

IV.

Jack Yanka was sentenced as a career offender under U.S.S.G. § 4B1.1, which applies if a defendant has two prior felony convictions for either a crime of violence or a controlled substance offense. Yanka has prior Minnesota convictions for motor vehicle theft and for aiding and abetting second degree murder.

Our review of whether a prior offense is a crime of violence under U.S.S.G. § 4B1.2(a) is de novo. See United States v. Cantrell, 530 F.3d 684, 694 (8th Cir. 2008). A crime of violence is any felony offense that either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

Yanka's auto theft conviction under Minn. Stat. § 609.52(2)(17) is for taking or driving a motor vehicle "without the consent of the owner . . . , knowing or having reason to know that the owner . . . did not give consent."  This statute can be violated in only one way—by taking a vehicle without the owner's consent.  Under United States v. Williams, 537 F.3d 969 (8th Cir. 2008), reh'g en banc denied, No. 07-2679, 2008 WL 4767458 (8th Cir. Oct. 31, 2008), such an offense is not a crime of violence within the meaning of U.S.S.G. § 4B1.2(a).  Yanka therefore has only one predicate offense, and he is not a career offender under the advisory guidelines.

The district court thus committed procedural error by calculating Yanka's advisory guideline range incorrectly.  See Gall v. United States, 128 S. Ct. 586 (2007).  The parties agree that the error was not harmless despite the court's significant downward variance from an advisory guideline range of 235–262 months to the statutory minimum of 120 months.  The government had requested a downward variance under U.S.S.G. § 5K1.1 based on Yanka's substantial assistance, and stated at oral argument that on remand it would consider moving under 18 U.S.C. § 3553(e) for a sentence below the statutory minimum.

## V.

In sum, we affirm the judgment of the district court in respect to Aleman and Martinez, but we vacate Yanka's sentence and remand for resentencing.

_____