# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1326

_____

United States of America,

        Appellee,

v.

Miklos A. Molnar,

        Appellant.

\* Appeal from the United States
\* District Court for the Western
\* District of Arkansas.

_____

Submitted: September 21, 2009
Filed: January 12, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Miklos Molnar appeals his sentence following his plea of guilty to embezzlement. Though his calculated guideline range was ten to sixteen months, the district court varied upward and sentenced Molnar to sixty-months' imprisonment followed by two years of supervised release. We reverse and remand for resentencing.

## I.    BACKGROUND

Since 1987, Molnar worked as a police officer in Van Buren, Arkansas. In August 2000, Molnar joined the Drug Enforcement Administration Task Force. In this capacity, Molnar had access to seized drug funds, and he was in charge of the Van Buren Police Department evidence room–one of only three people with a key to this room. Molnar testified at the sentencing hearing that at some point in 2006, he used money from the evidence room to pay personal bills. Initially, he tried to repay the money with his own funds. However, the scheme eventually "got out of control" and he began using one sum of seized money to pay back other seized funds. This process occurred over a two-year period.

A local prosecutor became suspicious when he noticed that Molnar deposited a $1,000 check for "drug buy" money into his personal account. When confronted by the Chief of Police about this, Molnar explained that he had used his personal funds for "drug buy" money and was simply reimbursing himself for the $1,000. The Chief told him not to make this practice a habit because it did not look good.[1] The prosecutor had also complained that Molnar was slow to return $19,000 in funds that a state court ordered were to be returned to a party from whom the funds were confiscated. When the Chief inquired about this situation, Molnar indicated that he could produce the $19,000. However, when the Chief ordered him to go to the evidence room and produce the money, Molnar acknowledged that he could not and admitted to taking seized money from the evidence room for personal use. Molnar pleaded guilty to embezzlement and paid full restitution to the police department.

---

[1]As we understand the record, Molnar was never accused of embezzling this particular sum of money.

During sentencing, the following colloquy took place between the district court and the Van Buren Police Chief, discussing the nature of the funds in the evidence room:

THE COURT: Are some of those funds then used to say purchase drugs or for undercover type activity?

A: No. The Van Buren Police Department itself does not do that, Your Honor. It's something that would, if that money was going to be converted to that use, we would give it to Marc McCune, the prosecutor's office, and let him in turn distribute that through drug buy money or however he wanted to do that.

THE COURT: But these funds would not be drug–couldn't be classified then as potential drug buy money?

A: No. It had not reached that far yet.

THE COURT: But that could have been the use for these funds at some point?

A: It could have been; yes, sir.

THE COURT: And that is done from time to time by your department? Do you use these funds or similar funds to purchase–

A: The Van Buren Police Department itself does not have a so-called drug buy fund. Individual officers, narcotic officers are responsible for drug buy money that they receive from Marc McCune, the Prosecuting Attorney. The city itself does not have [a] so-called drug buy fund account; no.

Later, when Molnar was on the witness stand, the district court similarly questioned him about the issue.

-3-

THE COURT:	Could any of funds that you admittedly embezzled, $50,997, could that have been used for drug buy money in any sense?

A:	It could have been converted by the prosecutor's office to that, Your Honor, once it's turned over to them.

THE COURT:	But if the money is not there, you would have difficulty in turning anything over, would you not?

A:	Yes, sir.

Prior to pronouncing sentence, the district court sustained Molnar's two objections to the presentence investigation report (PSIR), reiterated that he had previously notified the parties of his possible intent to impose either an upward departure or variance, and set forth the statutory penalties for the offense. The court found that Molnar's offense level was twelve but added two levels for violation of the fiduciary trust relationship. Molnar's criminal history category was one and the advisory guideline range was ten to sixteen months. After taking one last round of argument from counsel, the court noted it had reviewed the sentencing factors reflected in 18 U.S.C. § 3553(a), and announced that it would sentence Molnar to a term of sixty-months' imprisonment followed by two years of supervised release. The court found that Molnar's crime violated the public trust in law enforcement, stating that "[l]awbreaking by a high-ranking police officer promotes disrespect for the law and must be addressed at this sentencing." The district court also stated it was concerned that "some of these funds that were used and utilized were not available to the DEA where those funds could have been used to purchase drugs from drug dealers, so I think your activities have significantly impaired multiple drug prevention work." Immediately following this statement, the court asked Molnar's counsel whether he had any objections to the court's stated intentions beyond what had already been raised, and counsel replied that he did not have any further objections.

## II.  DISCUSSION

Molnar argues that the district court committed a procedural sentencing error by relying on clearly erroneous factual findings with regard to Molnar's actions significantly impairing department drug prevention work, i.e., the inability of the department to use seized funds for "drug buy" money due to Molnar's actions. Because Molnar did not object to this alleged error before the district court, we review for plain error. United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009). To establish plain error, Molnar must prove that (1) there was error, (2) the error was plain, and (3) the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). An error affects a substantial right if the error was prejudicial. Id. at 734. In the sentencing context, an error is prejudicial only if the defendant proves a reasonable probability that he would have received a lighter sentence but for the error. United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005) (en banc). However, a fourth Olano factor dictates that we will exercise our discretion to correct such an error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (alteration in original) (internal quotations and citations omitted).

We find that the district court's assertion that Molnar's actions hindered drug task force agents from having adequate "drug buy" money was inaccurate and, therefore, was error. And, we find that this error was plain because there was no evidence that undercover drug task force work was actually impaired. Instead, the record showed that Molnar originally became the target of suspicion after the prosecutor noticed he had deposited a $1,000 check for "drug buy" money into his personal account, but Molnar was never accused of embezzling this particular sum of money. With regard to the $19,000 in confiscated funds, while perhaps Molnar's actions delayed the individual with rights to the $19,000 from reclaiming his seized cash in a timely manner, there was no evidence that drug task force agents confronted similar problems.

-5-

Furthermore, the error was plain under clearly established Arkansas law, which would not have allowed drug task force officers to walk into the evidence room, take cash, and use the cash to make controlled drug buys. As the Arkansas Court of Appeals noted in State v. Hammame, 282 S.W.3d 278, 281 (Ark. Ct. App. 2008), the process is more complex than that. Instead, a prosecuting attorney must initiate forfeiture proceedings that do not in any way involve the seizing agency. Id.; Ark. Code Ann. § 5-64-505(e),(f),(h),(i). In fact, the seizing agency has no claim to the property unless and until it is ordered forfeited by the court, and even at that point, where the money is distributed is statutorily conditioned. Hammame, 282 S.W.3d at 281. Finally, "known owners or interest holders are entitled to seized property if it is not forfeited." Id. (citing Ark. Code Ann. § 5-64-505(g)(3)(C), (g)(5)(A)(iii)(b)).

Accordingly, the seized money being stored in the evidence room certainly could not have been the direct source for "drug buy" money–i.e., a DEA agent could not simply walk into the evidence room, take money, and use it for a drug buy. Furthermore, under the facts of this case, the seized money could not have been an indirect source for "drug buy" money because there is no evidence that the court ordered money forfeited, that forfeited money was designated for use as "drug buy" money, but then the money was unavailable for use. There was simply no testimony or other evidence that drug task force agents were "significantly impaired" in their abilities to perform drug prevention work due to Molnar's actions. Accordingly, the district court's reference to "drug buy" money to justify a substantial upward variance to Molnar's sentence was plain error.

The next question is whether this error affected Molnar's substantial rights, which in this context means whether Molnar can prove he would have received a lighter sentence absent the error. Having carefully reviewed the sentencing transcript, we find that Molnar can meet this burden. The district court seemed especially interested in the idea that drug task force agents were hampered in their duties due to money missing from the Van Buren Police Department evidence room. The district

court questioned two witnesses about the issue at the sentencing hearing, and reiterated this concern when pronouncing Molnar's sentence. Though the district court did mention one other factor[2] in its decision to vary upward, we find that given the extent of the variance, there is a reasonable probability that had the district court not plainly erred in considering the facts relating to "drug buy" money, it would not have varied upward to the extent–275%–that it did.

Finally, we consider the fourth Olano factor and find that leaving the error uncorrected would result in a miscarriage of justice substantially affecting the fairness, integrity or public reputation of the proceedings. Olano, 507 U.S. at 732. On numerous past occasions where a defendant has met his burden of proving that there is a reasonable probability he would have received a lighter sentence absent plain error, we have exercised our discretion under the fourth factor and vacated the sentence. E.g., United States v. Nahia, 437 F.3d 715, 717 (8th Cir. 2006) (holding that we felt "compelled" to follow circuit precedent and vacate for resentencing when defendant had met the first three Olano factors, even without a more stringent analysis of the fourth factor). Accordingly, we follow circuit precedent and vacate Molnar's sentence and remand to the district court for resentencing.

## III.  CONCLUSION

For the reasons stated herein we reverse the sentence and remand to the district court for resentencing.

_____

_____

[2]The district court commented on the defendant's special duty as a police officer not to violate the public trust. We fully agree with the court that this is a very important point. We note, however, that Molnar had already received a two-level role enhancement as part of his sentencing calculation because he was in a position of public trust. PSIR ¶ 20.