# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3627

_____

United States of America

*Plaintiff - Appellee*

v.

Carlous S. Horton

*Defendant - Appellant*

_____

No. 12-3628

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher M. Holmes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 21, 2013
Filed: March 24, 2014
_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Carlous S. Horton and Christopher M. Holmes of multiple crimes stemming from their involvement in a cocaine-distribution ring. They each received a life sentence and each appealed, raising numerous procedural, evidentiary, and sentencing errors. We reject their arguments and affirm their convictions and sentences.[1]

I.

The investigation into Carlous Horton began when Horton was stopped by the Oklahoma Highway Patrol and found to be transporting a pound of cocaine. After the stop, DEA agents contacted Horton with the hope that Horton could assist the Government in its investigation of drug activities in the Springfield-Branson, Missouri area. Horton refused to cooperate, but, because of the stop, the DEA began to take interest in Horton's activities. As time progressed, the DEA continued to gather intelligence on Horton. Eventually, it learned of a potential informant who claimed to have been buying cocaine from Horton.

Using its newly found informant, the DEA arranged several controlled cocaine buys. While monitoring these controlled cocaine purchases, the DEA discovered that Horton had a partner, Christopher Holmes. The DEA's confidential informant arranged purchases from both Horton and Holmes. The DEA used the information

_____

[1]The late Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

from these controlled buys to obtain wiretaps on phone numbers associated with Horton's cocaine activities. Over the next year, the DEA gathered extensive evidence that Horton and Holmes were heavily involved in cocaine distribution. The DEA recorded thousands of drug-related phone calls and text messages. Finally, on March 11, 2011, the DEA executed search warrants on three residences in Southwestern Missouri known to be connected with Horton and Holmes's drug enterprise. In its search of the residences, the DEA recovered large amounts of cocaine and several guns.

Horton and Holmes were charged, along with several other defendants, in a 70-count indictment. Horton was named in 59 of the counts; Holmes was named in 3 counts. Though many of their co-conspirators pled guilty, Horton and Holmes elected to continue to trial. After a six-day trial, a jury found Horton guilty of: (1) conspiracy to distribute 5 kilograms or more of cocaine, to manufacture 280 grams or more of cocaine base, and to distribute 280 grams or more of cocaine base; (2) distribution of cocaine; (3) possession of cocaine with the intent to manufacture; (4) possession of a firearm by a convicted felon; (5) money laundering; and (6) wire fraud. Holmes was found guilty of: (1) conspiracy to distribute 5 kilograms or more of cocaine, to manufacture 280 grams or more of cocaine base, and to distribute 280 grams or more of cocaine base; (2) possession of cocaine with the intent to distribute; and (3) possession of a firearm by a convicted felon.

Because of their prior criminal records, 21 U.S.C. § 841(b)(1)(A) mandated life sentences, and Horton and Holmes were each sentenced to life in prison. Horton and Holmes timely appealed their convictions and sentences. We consider Horton and Holmes's joint arguments[2] in Part II, collectively referring to them as the Appellants, and we consider Holmes's separate arguments in Part III.

---

[2]Christopher Holmes has elected to adopt by reference the issues raised in Carlous Horton's opening brief. See Fed. R. App. P. 28(i).

II.

The Appellants raise four arguments on appeal: (1) the Government violated their Fourth Amendment rights by engaging in extensive pre-arrest surveillance; (2) the Government violated their due process rights by failing to disclose material, exculpatory evidence, in violation of Brady,[3] and by engaging in outrageous conduct throughout Horton and Holmes's investigation and prosecution; (3) the district court erred by not holding a Remmer[4] hearing to investigate a potential juror problem that arose during trial; and (4) the Western District of Missouri's juror selection plan violated their Sixth Amendment rights.[5]

A.

The Appellants argue that evidence used by the Government at trial should have been suppressed because it was obtained in violation of their Fourth Amendment rights. The Appellants argue that the Government should have arrested Horton as soon as it had sufficient evidence to charge him, and the Government's recording of their conversations with the Government's confidential informant violated their

---

[3]Brady v. Maryland, 373 U.S. 83 (1963).

[4]Remmer v. United States, 347 U.S. 227 (1954).

[5]The Appellants also allege that the district court impermissibly excluded them from the courtroom on the first day of the trial during the afternoon voir dire examination. The minute sheet filed on that day reflects that each defendant was present at trial with counsel in the morning and afternoon sessions. See Minute Sheet at 1, No. 6:11-cr-03021-RED (W.D. Mo. Apr. 23, 2012), ECF No. 350. Furthermore, the district court judge made several references to the defendants' presence in the courtroom. Trial Tr. at 91-92 ("Okay. Now I'm going to introduce the parties to you. The defendants in this case—I'll ask the defendants each to stand when I call your name—are Carlous Horton. Okay. Thank you. And Christopher Holmes. Thank you, sir."). Given the various references to both Horton and Holmes throughout the day, and their trial counsels' failure to raise any objections at the time, we find no basis in the record to support a potential violation.

Fourth Amendment rights. Finally, they contend that the Government failed to comply with the procedural requirements necessary to obtain a wiretap.

The Appellants failed to raise these arguments at the pretrial suppression hearing and also failed to raise these arguments at trial. Because "[t]hese contentions were not raised in a pretrial motion to suppress evidence," they are waived, and we need not consider them. United States v. Green, 691 F.3d 960, 963-64 (8th Cir. 2012) ("Because 'waived claims are unreviewable on appeal,' the waiver provision of Rule 12 precludes appellate review of arguments to suppress evidence that are not raised in a pretrial motion to suppress." (quoting United States v. Booker, 576 F.3d 506, 511 (8th Cir. 2009))); see also United States v. Dunn, 723 F.3d 919, 927 (8th Cir. 2013) (holding that the defendant's argument that wiretap evidence should be suppressed was waived because the defendant "did not raise this issue in his pretrial motion to suppress"); United States v. Henderson, 613 F.3d 1177, 1182 (8th Cir. 2010) ("By not raising this suppression argument below, [the defendant] waived the claim, rendering it unreviewable on appeal." (internal quotation marks omitted)). We may "grant relief from the waiver for 'good cause.'" Green, 691 F.3d at 965 (quoting Fed. R. Crim. P. 12(e)). The Appellants, however, have failed to establish a good cause for granting such relief in this case because the Government had no obligation to arrest Horton as soon as it had sufficient evidence to charge him. See United States v. Lovasco, 431 U.S. 783, 791-93 (1977).

## B.

The Appellants insist that the Government violated their due process rights by failing to disclose potentially exculpatory evidence and by engaging in outrageous conduct throughout the investigation and prosecution.

## 1.

The Appellants argue that the Government violated its Brady obligation by failing to disclose material, exculpatory evidence. Because they failed to raise the

alleged <u>Brady</u> violations at trial, we review for plain error. <u>United States v. Aleman</u>, 548 F.3d 1158, 1164 (8th Cir. 2008). To obtain relief under a plain-error standard of review, the party seeking relief must show that: (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected the party's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. <u>United States v. Poitra</u>, 648 F.3d 884, 887 (8th Cir. 2011). First, the Appellants allege that the Government failed to produce the results of palm print and fingerprint comparisons. Second, they allege that the Government failed to provide Horton access to one of his personal computers that contained financial files Horton needed for his defense. Because the record indicates that Horton was indeed given access to his computer,[6] we need only address the palm prints and fingerprints claim.

Ten months before trial, the Government requested Horton's palm prints and fingerprints so it could determine if Horton's prints matched those found on two canisters that were discovered in one of the drug houses. The district court entered an order compelling Horton to comply with the Government's request, subject to two conditions: (1) the print comparisons were to be completed within 30 days of the order, and (2) the Government was to submit the results to defense counsel. The record, however, fails to indicate whether the palm print and fingerprint analyses ever took place. The Government never introduced the print comparisons at trial, and the Appellants failed to request the comparisons at trial. Now, on appeal, the Appellants

---

[6]The Government contends that it provided Horton an opportunity to access the computer, but that Horton failed to act on the Government's offer. In any event, the Government provided Horton his computer before trial, and Horton was given time to access his financial files. <u>See</u> Trial Tr. at 19-25. The record indicates that Horton sought access to financial files in order to help prove his contention that the DEA stole money from him while conducting its search of his residence, which is dealt with in more detail below in Part II.B.2.

speculate that the Government failed to produce the print comparisons because the evidence was exculpatory.

The Appellants' Brady claim fails at step one of our plain-error review. Brady requires the government to disclose evidence that is "both 'favorable to an accused' and 'material either to guilt or punishment.'" United States v. Whitehill, 532 F.3d 746, 753 (8th Cir. 2008) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). The Appellants note that the Government did not produce the requested print comparisons at trial. According to the Appellants, the Government's decision to exclude the print comparisons at trial must mean that the comparisons were favorable to them. The Appellants' argument, which is solely based on conjecture and speculation, cannot support a Brady violation. As we noted in Aleman, "mere speculation is not sufficient to sustain a Brady claim." 548 F.3d at 1164 (alterations omitted) (internal quotation marks omitted); see also United States v. Gary, 341 F.3d 829, 833-34 (8th Cir. 2003) (holding that defendants speculation on the results of a fingerprint test could not establish Brady claim), overruled on other grounds by Chambers v. United States, 555 U.S. 122 (2009); United States v. Sumner, 171 F.3d 636, 637 (8th Cir. 1999) (per curiam) (holding that no Brady violation occurred when the Government failed to inform the defendant that a fingerprint analysis performed on an envelope found at the scene of a crime did not match the defendant). Accordingly, because the Appellants have failed to show that the Government violated its obligations under Brady, their claim fails at step one of our plain-error review.

2.

The Appellants also argue that we should set aside their convictions and quash their indictments because of the Government's outrageous conduct throughout the investigation and prosecution. In reviewing a district court's denial of a motion to dismiss an indictment for alleged outrageous government misconduct, we review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Nieman, 520 F.3d 834, 838 (8th Cir. 2008). The Appellants allege

that the Government used a confidential informant known to abuse drugs, intimidated a witness, and stole money during one of its searches. In order for government misconduct to warrant dismissal, the conduct "must shock the conscience of the court." See United States v. Pardue, 983 F.2d 843, 847 (8th Cir. 1993) (per curiam) (internal quotation marks omitted). Morever, we are reminded that this "defense is reserved for conduct that falls 'within that narrow band of the most intolerable government conduct.'" See United States v. King, 351 F.3d 859, 867 (8th Cir. 2003) (quoting Pardue, 983 F.2d 847).

The Appellants have failed to show that the Government's conduct rises to the level of outrageousness needed to prove a due process violation because their allegations are either unsupported by the record or fail to "shock the conscience of the court." See Pardue, 983 F.2d at 847.

First, the Government's use of its confidential informant fails to establish a due process claim. The Government conceded that, after using the informant for approximately four months, it discovered that its informant was making unauthorized drug purchases. At that point, the Government ceased using the informant in a proactive manner, though the Government did not notify the informant that it was terminating their relationship for fear that doing so would jeopardize the Government's larger investigation. "'[T]he use of unsavory informants is quite often the nature of the beast in police investigations,'" and here, because the Government neither directed or encouraged its informant's impermissible behavior, the informant's misconduct cannot be attributed to the Government. See Nieman, 520 F.3d at 838 (quoting United States v. King, 351 F.3d 859, 868 (8th Cir. 2003)).

Second, the Government did not impermissibly intimidate Horton's witness to keep her from testifying. Horton sought to have a witness testify to support his allegation that the DEA stole money during its search of his home. Before the witness, who Horton failed to indicate as a potential witness prior to the hearing, took

the stand, the Government informed the court that the witness was the subject of a Social Security Administration investigation and that the witness may want to seek legal counsel before testifying. The witness decided not to testify. Though "government conduct designed to intimidate potential defense witnesses is improper," United States v. Habhab, 132 F.3d 410, 415 (8th Cir. 1997), a prosecutor is not prohibited from suggesting that a defense witness should speak with an attorney to prevent self-incrimination. See United States v. Mahasin, 362 F.3d 1071, 1087 (8th Cir. 2004).

Finally, Horton's allegation that DEA agents stole approximately $9,000 from his residence while executing a search warrant is not sufficient to support the Appellants' claim of outrageous government conduct that violated their right to due process. Horton's allegation may provide a basis for a civil action,[7] but, because our precedent has focused the outrageous-conduct inquiry on situations in which officers "create crimes in order to lure a defendant into illegal activity '[the defendant] was not otherwise ready and willing to commit,'" the allegation is insufficient to support a due process claim. See United States v. Boone, 437 F.3d 829, 842 (8th Cir. 2006) (quoting United States v. Lard, 734 F.2d 1290, 1297 (8th Cir. 1984)); see also King, 351 F.3d at 867-68.

## C.

The Appellants maintain that the district court erred in failing to hold a Remmer hearing to investigate the possibility that a juror may have overheard a conversation between Holmes's defense counsel and Holmes's family during a recess at trial.[8]

_____

[7]A district court dismissed Horton's civil suit against the DEA in April 2013, see Order at 1-3, Horton v. Drug Enforcement Agency, No. 6:11-cv-03381-GAF (W.D. Mo. Apr. 10, 2013), ECF No. 51, and the Eighth Circuit affirmed the dismissal, see Judgment, Horton, No. 13-2884 (8th Cir. Sept. 5, 2013).

[8]A Remmer hearing is a mechanism the district court may utilize to investigate allegations of intrusions on the jury. See United States v. Tucker, 137 F.3d 1016,

On day four of the trial, Holmes's defense counsel informed the district court that during a recess he noticed a juror standing a few feet away from him while he was discussing the case with the Holmes's family members. The district court, the prosecutor, and defense counsel discussed how they should proceed to remedy the potential problem. The court determined that it would continue with the trial, draw as little attention to what occurred as possible, and potentially question the juror when the court dismissed the alternates. At the close of the trial, the court requested the juror in interest to stay behind as the jury retired to deliberate. The court asked the juror if he had overheard the conversation about which Holmes's counsel was concerned, and the juror indicated that he had not. The judge then asked defense counsel if they had any questions for the juror; defense counsel indicated they did not. With that, the juror was excused and dismissed from the panel, and an alternate juror took his place.

Because the Appellants failed to object at trial, we review the Appellants' Remmer claim for plain error. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). The Appellants contend that the district court had an obligation to conduct a full hearing to explore the possibility that the juror may have overheard the discussion between Holmes's counsel and Holmes's family. We disagree. Trial courts are given substantial deference to resolve potential problems with the jury, see United States v. Melius, 123 F.3d 1134, 1138 (8th Cir. 1997), and with this deference in mind, we hold that the district court reasonably resolved the possibility that the juror was exposed to improper information. The district court properly weighed the "gravity of the alleged misconduct," which was relatively minor, and the "substantiality of the [Holmes's] showing of misconduct." See Tucker, 137 F.3d at 1031; accord United States v. Mack, 729 F.3d 594, 605-06 (6th Cir. 2013) (holding that defendant's Remmer challenge, based on a juror potentially overhearing a conversation between testifying FBI agents during a lunch break, failed under a plain-

1030-31 (8th Cir. 1998).

-10-

error review because the defendant failed to create a record that could establish the necessity of a full hearing). The juror informed the court, in the presence of defense counsel, that the juror did not overhear the conversation, and the court invited defense counsel to question the juror further, an invitation that was declined. The court relied on the juror's statement, see Smith v. Phillips, 455 U.S. 209, 217 & n.7 (1982), to determine that dismissing the juror would adequately resolve the issue. The Appellants' suggestion that the juror was potentially exposed to improper information was resolved by the district court. Thus, there was no reason for the district court to take additional measures. The Appellants have failed to show error, the first prong of our plain-error review.

D.

The Appellants contend that the Western District of Missouri's juror selection plan[9] violates the fair-cross-section requirement of the Sixth Amendment. To establish a fair-cross-section claim, the Appellants are required to show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

United States v. Jefferson, 725 F.3d 829, 835 (8th Cir. 2013) (quoting United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998)).

The Appellants argue that their right to an "impartial jury drawn from a fair cross section of the community," Taylor v. Louisiana, 419 U.S. 522, 536 (1975), was

---

[9]The Western District of Missouri's juror selection plan derives the pool of potential jurors from merged lists of general election voter registration and licensed drivers.

violated because their juror pool did not include any African-American jurors. The Appellants failed, however, to provide any data on the racial makeup of juror pools in the Western District of Missouri or any statistical analyses showing under-representation. Cf. United States v. Rogers, 73 F.3d 774, 776-77 (8th Cir. 1996) (providing examples of the type of statistical data needed to establish a prima facie case). The only evidence they provide in support of their argument, aside from their own observation that the juror pool lacked African-American jurors, is census data showing the total population of African-Americans in Springfield, Missouri and Missouri as a whole. We reject the Appellants' Sixth Amendment fair-cross-section claim because of their inability to provide any evidence that the jury panel was not chosen from a fair and impartial cross-section of the community. Jefferson, 725 F.3d at 835; see also Singleton v. Lockhart, 871 F.2d 1395, 1399 (8th Cir. 1989) ("Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion.").

## III.

Separately, Holmes raises three arguments on appeal: (1) the district court erred when it admitted, pursuant to Federal Rule of Evidence 404(b), evidence of his prior criminal convictions; (2) the district court erred in sentencing him to a mandatory life term because his presentence investigation report (PSR) failed to state that a mandatory life sentence was a possible sentence; and (3) the district court erred by failing to address his Blakely[10] objections to the PSR.

## A.

Holmes asserts that the district court erred in admitting, pursuant to Federal Rule of Evidence 404(b), evidence of Holmes's prior drug convictions. In the case currently on appeal, Holmes was charged with (1) conspiracy to distribute cocaine; (2) possession of cocaine with the intent to distribute; and (3) possession of a firearm

---

[10]Blakely v. Washington, 542 U.S. 296 (2004).

by a convicted felon. The Government introduced into evidence, over defense counsel's objection, three of Holmes's former convictions: (1) a 2004 conviction for possession of a controlled substance; (2) a 2006 conviction for possession of a controlled substance with intent to deliver; and (3) a 2004 conviction for attempted felony possession of a firearm.

We review a district court's decision to admit evidence under Rule 404(b) for abuse of discretion. See United States v. Wilson, 619 F.3d 787, 791-92 (8th Cir. 2010). Rule 404(b) is a rule of inclusion, and, as such, if "evidence [is] offered for permissible purposes [it] is presumed admissible absent a contrary determination." United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006). Evidence is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005). Holmes claims that the first, second, and fourth considerations of our Rule 404(b) analysis all weigh in favor of reversal. We disagree and hold that the district court did not abuse its discretion in admitting evidence of Holmes's prior convictions.

Beginning with the first 404(b) consideration, Holmes's prior convictions are relevant to the material issue of Holmes's state of mind. "It is settled in this circuit that 'a prior conviction for distributing drugs, and even the possession of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs.'" United States v. Robinson, 639 F.3d 489, 494 (8th Cir. 2011) (quoting United States v. Frazier, 280 F.3d 835, 847 (8th Cir. 2002)). Additionally, evidence of prior possession of drugs is admissible "to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element." United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000) (internal quotation marks omitted); see also United States v. Tyerman, 701 F.3d 552, 562-63 (8th Cir. 2012)

("[Rule] 404(b) evidence may establish motive and intent in felon-in-possession cases.").

Next, each of the offenses introduced was similar in kind to Holmes's current charges and sufficiently close in time to Holmes's trial, satisfying the second consideration. Holmes's prior drug and gun convictions are virtually identical in kind to the current charges he faced, and the most remote of Holmes's prior convictions was eight years old at the time of trial, a length of time we have found sufficiently close on several occasions. See, e.g., United States v. Gaddy, 532 F.3d 783, 789 (8th Cir. 2008) (holding that prior convictions of "four, ten and eleven years old" were not so remote to be inadmissible). Finally, with regard to the fourth consideration, the district court's limiting instruction mitigated any potential prejudicial effect evidence of Holmes's prior convictions may have had on the jury. See Robinson, 639 F.3d at 494. Accordingly, we conclude that the district court did not abuse its discretion by admitting evidence of Holmes's former convictions.

B.

Holmes argues that his sentence should be vacated because the district court erred in sentencing him to mandatory life imprisonment when his PSR failed to provide that the he was facing a mandatory life sentence. Because Holmes admittedly failed to object to this alleged procedural error before the district court, we review for plain error. United States v. Burnette, 518 F.3d 942, 945 (8th Cir. 2008) ("Procedural sentencing errors are forfeited, and therefore may be reviewed only for plain error, if the defendant fails to object in the district court."); see also United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011) (holding that plain-error standard requires a party to show that "there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings"). In the sentencing context, an error affects a defendant's "substantial rights" when the error is prejudicial, and "'an error is prejudicial only if the defendant proves a reasonable probability that he would

-14-

have received a lighter sentence but for the error.'"  United States v. Franklin, 695 F.3d 753, 757 (8th Cir. 2012) (quoting United States v. Molnar, 590 F.3d 912, 914 (8th Cir. 2010)); see also United States v. Pirani, 406 F.3d 543, 551-53 (8th Cir. 2005) (en banc).  Holmes cannot show that the error was prejudicial because he cannot show that he would have received a lighter sentence but for the alleged misstated sentencing range in the original PSR.  Accordingly, we reject Holmes's challenge.

Prior to trial, the Government filed with the district court an information pursuant to 21 U.S.C. § 851, which provided notice of its intent to use Holmes's prior criminal convictions for enhancement purposes.  Shortly after, at a pretrial hearing, the Government stated in the presence of Holmes that Holmes would be facing a mandatory life sentence if convicted but that he could, instead, plead guilty and face a lesser mandatory minimum.  See Tr. Pretrial Conference at 2-3, No. 6:11-cr-03021-RED (W.D. Mo. Apr. 11, 2012), ECF No. 583.  The judge presiding over the pretrial conference verified that Holmes understood the gravity of the decision he faced:

> Court:  All right.  Mr. Holmes, you understand that the United States has filed what's called an enhancement, which would raise, if convicted at trial, raise the minimum mandatory to life imprisonment.  They have offered as a plea agreement to drop one of those enhancements, which would change the minimum mandatory from life to 20 years.  Do you understand that?
> Holmes:  Yes, sir.
> Court:  All right.  So, you need to discuss that with your attorney promptly and make a decision that's in your best interest.  And with that, —
> Holmes:  Yes, sir.
> Court:  —we'll be in recess.

See id. at 3.  As this exchange indicates, Holmes was aware that he faced the potential for life in prison if he proceeded to trial.  When Holmes's PSR was drafted, however, it failed to reflect that Holmes was facing a mandatory life sentence.  Instead, the PSR

provided a sentencing range of 324 to 405 months. Neither side objected to the sentencing-range error, and the PSR was finalized on September 11, 2012.

At the sentencing hearing in October, the court notified Holmes that, contrary to the original PSR, he was facing a mandatory life sentence. See Sentencing Tr. at 3, 6, No. 6:11-cr-03021-RED (W.D. Mo. Dec. 17, 2012), ECF No. 553. Though the minute sheet for the day's proceedings reflects that the district court corrected the PSR at the sentencing hearing, see Minute Sheet at 1, No. 6:11-cr-03021-RED (W.D. Mo. Oct. 26, 2012), ECF No. 520, the transcript does not contain a record of the correction. In any event, the PSR was later amended to reflect the correction and conform with the sentence imposed. Sentencing Addendum to the Presentence Report at 1, No. 6:11-cr-03021-RED (W.D. Mo. Oct. 29, 2012), ECF No. 509.

We need not determine whether the misstated sentencing range in the original PSR satisfies the first two prongs of our plain-error analysis because even if we were to assume that the misstated sentencing range constituted an error that was clear or obvious, Holmes fails to show that he would be entitled to a lighter sentence but for the error. See Franklin, 695 F.3d at 757. The most significant problem with Holmes's argument is that he faced a mandatory minimum sentence. Absent a government motion, "'the district court is without authority to impose a sentence below a statutory mandatory minimum sentence.'" United States v. Perez, 526 F.3d 1135, 1138 (8th Cir. 2008) (quoting United States v. Holbdy, 489 F.3d 910, 912 (8th Cir. 2007)); see also 18 U.S.C. § 3553(e), (f). Because Holmes's sentence was mandatory, the error in the PSR had no affect on the sentence Holmes received. See United States v. Chacon, 330 F.3d 1065, 1065-66 (8th Cir. 2003) (affirming a defendant's sentence when the district court overlooked the statutory minimum, sentenced the defendant to the wrong term, and later discovered and corrected the error). Accordingly, Holmes is unable to show a reasonable probability that but for the error in the PSR he would have received a more favorable sentence. See Pirani, 406 F.3d at 553; cf. United States v. Crawford, 487 F.3d 1101, 1108 (8th Cir. 2007) ("Because [the defendant's]

sentence was driven by mandatory minimum terms of incarceration defined by statute, there is nothing *any* attorney could have done to achieve a more favorable result at sentencing."). Since the misstated sentencing range did not affect Holmes's substantial rights, he has not shown plain error.

C.

Holmes contends that the district court erred by failing to address his <u>Blakely</u> based objections to the PSR. Holmes objected to the offense conduct portion of the PSR in its entirety with the following pro-forma objection:

> This objection is made pursuant to <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) (sentencing enhancements not admitted to by defendant or found by the jury beyond a reasonable doubt are unconstitutional) and pursuant to <u>United States v. Menteer</u>, 408 F.3d 445 (8th Cir. 2005) (when a defendant does not object to a fact in a presentence report, the defendant is generally presumed to have admitted the fact for sentencing purposes). Such admissions are deemed made even for Sixth Amendment arguments. See <u>United States v. Thorn</u>, 413 F.3d 820 (8th Cir. 2005).

Holmes also objected to the criminal history portion of his PSR. At sentencing, Holmes's counsel informed the court that she had no additional objections to the PSR. <u>See</u> Sentencing Tr. at 2. The district court overruled Holmes's objections and continued with sentencing. Holmes now argues on appeal that the district court should have conducted a separate hearing to rule on his objections and fully explain its reasoning.

We disagree with Holmes's contention and find no error in the district court's actions. Holmes failed to notify the Government and the court of any specific facts he disputed and instead opted to challenge the entire offense conduct section with a general <u>Blakely</u> objection. This objection was too vague to alert the Government and the court of any specific, disputed issues. See <u>United States v. Rodriguez</u>, 711 F.3d

-17-

928, 939-40 (8th Cir. 2013); United States v. Davis, 583 F.3d 1081, 1095 (8th Cir. 2009) ("The reason we require specific objections is to put the Government on notice of the challenged facts which the government will need to prove at the sentencing hearing." (internal quotation marks omitted)); cf. United States v. Sorrells, 432 F.3d 836, 837-39 & n.2 (8th Cir. 2005) (holding that defendant's objections "were minimally sufficient" because they alerted the court to specific uncharged conduct relied upon by the sentencing judge). Holmes's challenge to the criminal history section was equally vague and therefore fails. See Rodriguez, 711 F.3d at 939-40.[10]

## IV.

Having reviewed the record carefully, and having considered all of the contentions on appeal, we find no basis for reversal. Accordingly, we affirm Horton and Holmes's convictions and sentences.

_____

[10]We recently recognized that Alleyne v. United States, 133 S. Ct. 2151 (2013), "left intact the rule that enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury." See United States v. Abrahamson, 731 F.3d 751, 751-52 (8th Cir. 2013) (per curiam).