# United States Court of Appeals
### For the Eighth Circuit
_____

No. 19-1516
_____

United States of America,

*Plaintiff - Appellee,*

v.

Lamont E. Owens,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 13, 2020
Filed: July 15, 2020
_____

Before SMITH, Chief Judge, COLLOTON and STRAS, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Lamont Owens was convicted by a jury of drug trafficking and firearms offenses, and the district court[1] sentenced him to 220 months in prison. On appeal,

_____

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

Owens raises several challenges to his convictions and sentence. We conclude that there is no reversible error and therefore affirm the judgment.

I.

In August 2015, a Kansas City police officer learned from a confidential informant that Owens was selling drugs. Over the next few months, an undercover officer purchased crack cocaine from Owens on five occasions. Three times, officers observed Owens leave a house on Montgall Avenue before arriving at the location of the sale.

Police executed a search warrant at the house on Montgall Avenue in October 2015 and seized evidence of drug trafficking. On Owens's person, officers found 75 bags containing a total of fifteen grams of cocaine base. In a safe in one of the bedrooms, officers found a loaded handgun and nearly $10,000 in cash. From a dresser in the same bedroom, officers seized seven bags containing approximately two grams of cocaine base. In the basement, officers found nearly forty grams of cocaine base, approximately 100 baggies, a money counter, four digital scales, and two handguns, one of them loaded.

A grand jury returned an indictment with eight charges against Owens. One count, arising from drugs seized at the house, charged possession with intent to distribute 28 grams or more of cocaine base. Another count alleged possession of two firearms, seized from the basement of the house, in furtherance of a drug trafficking crime. A third count charged unlawful possession of firearms as a previously convicted felon. Five more charges were for distribution of cocaine base based on the sales to the undercover officer. After a trial, a jury found Owens guilty on all counts.

At sentencing, the district court determined an advisory guideline range of 152-175 months' imprisonment. The court then varied upward from the range and sentenced Owens to 220 months in prison.

II.

A.

On appeal, Owens first argues that he was convicted in violation of his right under the Sixth Amendment to trial by an impartial jury drawn from a fair cross section of the community. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). Owens, an African American, complains that the forty-five member venire panel for his trial included no African Americans. He objected to the composition of the panel and unsuccessfully moved to dismiss it. The district court noted that "from time to time our . . . jury panels lack diversity," but explained that the panel had been selected according to the district's ordinary practice, which draws names from merged lists of general election voter registration and licensed drivers. *See United States v. Horton*, 756 F.3d 569, 578 n.9 (8th Cir. 2014).

"The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process." *United States v. Jefferson*, 725 F.3d 829, 835 (8th Cir. 2013) (internal quotation omitted). To establish a prima facie case of a constitutional violation, a defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364. If a defendant makes this showing, then the

-3-

government must demonstrate that attainment of a fair cross section is incompatible with a significant governmental interest. *Id*. at 367-68.

Owens has not made a prima facie showing. He points to census data establishing that approximately twenty-four percent of citizens in Jackson County, Missouri, are African American, but Jackson County is not the entire Western District, and a discrepancy between demographic data and the composition of a single venire panel does not establish systematic exclusion in any event. *See Horton*, 756 F.3d at 578. Owens contends that the district court acknowledged systematic exclusion when it admitted that jury panels lack diversity "from time to time," but the court merely observed that not every venire panel drawn from the rolls of voters and drivers is racially diverse. A stronger showing is required to make a prima facie case of systematic exclusion.

B.

Owens raises several arguments related to jury instructions. We review to determine whether the instructions, taken as a whole, fairly and adequately submitted the issues to the jury. *United States v. Collier*, 932 F.3d 1067, 1076 (8th Cir. 2019).

Owens first challenges the court's instruction on reasonable doubt. The court used a definition of reasonable doubt that appeared for many years in the Eighth Circuit Model Jury Instructions. *See* R. Doc. 84, at 32; *Eighth Circuit Manual of Model Jury Instructions (Criminal)* 3.11 (1996).[2] Owens argues that the court erred

_____

[2]The district court gave the following instruction:

A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond

-4-

by declining to use a different definition that appears in more recent publications of the model instructions. *See* R. Doc. 81, at 2; *Eighth Circuit Manual of Model Jury Instructions (Criminal)* 3.11 (2018).[3] The former instruction provides that proof beyond a reasonable doubt "must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it," while the latter adds that a person would not hesitate to rely and act upon the proof "in life's most important decisions." Owens's preferred instruction also adds that proof beyond a reasonable doubt is "proof that leaves you firmly convinced of the defendant's guilt." Owens also notes that the revised model instruction provides that a reasonable doubt is "not doubt based on speculation" whereas the earlier version said it is not a doubt based on "the mere possibility of innocence."

The district court did not abuse its discretion in defining reasonable doubt. The "model" jury instructions are not promulgated by this court. Unless mandated by this court in a decision, they may serve as "helpful suggestions," but are "not binding on

---

a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

[3]Owens requested the following instruction:

Reasonable doubt is a doubt based upon reason and common sense, and not doubt based on speculation. A reasonable doubt may arise from careful and impartial consideration of all the evidence, or from a lack of evidence. Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person, after careful consideration, would not hesitate to rely and act upon that proof in life's most important decisions. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

the district courts." *United States v. Norton*, 846 F.2d 521, 525 (8th Cir. 1988). This court repeatedly has approved the version of the reasonable doubt instruction that the district court used here. *United States v. Spires*, 628 F.3d 1049, 1054 (8th Cir. 2011). That the Judicial Committee on Model Jury Instructions has amended the model instruction did not require the district court to deviate from its preferred version. *See United States v. Cornelison*, 717 F.3d 623, 628 (8th Cir. 2013).

Owens next disputes the district court's refusal to give an instruction as follows: "If you find and believe the evidence equally supports two theories, one consistent with guilt, one consistent with innocence, you must find the defendant not guilty." R. Doc. 81, at 3. The court declined to use this instruction, but told the jury that the defendant "begins the trial with a clean slate," and that the "burden of proof remains on the Government throughout the trial." R. Doc. 84, at 22. The court's instruction "accurately and correctly covered the substance" of Owens's proposed instruction, and the court was not required to use his preferred formulation. *United States v. Lewis*, 593 F.3d 765, 772 (8th Cir. 2010).

Owens's third contention relates to the instruction on the charge for unlawful possession of a firearm as a previously convicted felon. In light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), he argues that the district court erred by failing to instruct that the government must prove the defendant's knowledge that he was a person who had "been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Because Owens did not raise this objection in the district court, we review under the plain error standard. To prevail, Owens must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734-36 (1993).

The government tacitly acknowledges an obvious error after *Rehaif*, but maintains that Owens cannot satisfy the other two prongs of plain error review. The

third prong requires a defendant to "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotation omitted). The fourth prong calls for correction of an error only when a miscarriage of justice would otherwise result—that is, when the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotation and alteration omitted).

In this case, there was ample evidence available that Owens knew he was convicted of a crime punishable by imprisonment for a term exceeding one year. The record at sentencing showed that in 1990, Owens was convicted in Missouri state court of eight felonies, including second-degree murder, attempted first-degree robbery, armed criminal action, and first-degree assault. He was sentenced to eighty years' imprisonment and served twenty-two years. The government did not offer this evidence at trial, however, as it was not needed to prove the charge under then-prevailing law, and it would have been unfairly prejudicial to the defense if not relevant.

Assuming for the sake of analysis that plain error review should be limited to the record at trial, *see United States v. Miller*, 954 F.3d 551, 558 & n.17 (2d Cir. 2020), and that there would be a reasonable probability of a different outcome under a different jury instruction, this is not an appropriate case in which to correct an error. The full record shows that the government could have offered reliable evidence of Owens's criminal history at trial if it had been relevant under the prevailing law. There would have been no doubt that Owens, after serving twenty-two years in prison for murder and other felonies, was aware of his status as a person convicted of an offense punishable by more than a year in prison. Under these circumstances, rejecting Owens's claim would not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See id*. at 559-60. There was no plain error warranting relief.

## C.

Owens also contends that the district court erred in responding to a question from the jury. During deliberations, the jury submitted the following question: "Is there anywhere in the instructions that defines trafficking? If not, could we have clarification on this." R. Doc. 83, at 1. The term "trafficking" appeared in the court's instruction on the crime of possession of a firearm in furtherance of a drug trafficking crime as charged in Count Two. There, the court did not define "drug trafficking crime," but instructed the jury that the government was required to prove (1) that the defendant committed the crime of possession with intent to distribute cocaine base, as charged in Count One, and (2) that the defendant knowingly possessed firearms in furtherance of that crime. R. Doc. 84, at 25. Possession with intent to distribute cocaine base was the relevant drug trafficking crime.

In response to the jury's query, the court answered that "[d]rug trafficking offense means an offense under federal, state or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance or the possession of a controlled substance with intent to manufacture, import, export, distribute or dispense." R. Doc. 83, at 3. The court explained to the parties that the language was drawn from a definition of "drug trafficking offense" in the United States Sentencing Guidelines. *See* USSG § 2L1.2, comment. (n.2). Owens objected and argued that the court should have referred the jury back to the original instructions.

A supplemental instruction in response to a jury's inquiry should be "accurate, clear, neutral, and non-prejudicial," and it should remain "within the specific limits of the question presented." *United States v. Hudspeth*, 525 F.3d 667, 679 (8th Cir. 2008) (internal quotations omitted). Owens argues that the supplemental instruction was

neither neutral nor limited to the question presented: the jury asked only about "trafficking," but the court responded with a definition of "drug trafficking offense."

We are not convinced that it was error for the court to address the meaning of "trafficking" in the context of "drug trafficking offense." When the word "trafficking" appeared in the instructions, it was part of the phrase "drug trafficking crime." The court's answer thus did not improperly push the jury to associate "trafficking" with drug crimes. That was the only context in which the word was used in the instructions.

In his reply brief, Owens argues for the first time that the supplemental instruction was improper because it defined "drug trafficking offense" to encompass the manufacture, importation, and exportation of a controlled substance. We generally do not consider arguments raised for the first time in a reply brief, but Owens is correct that there was no evidence in this case of "manufacture, importation, or exportation" of drugs, and that definitions from the sentencing guidelines do not necessarily align with the meaning of terms in the federal criminal code.

Even so, Owens was not prejudiced by the supplemental instruction. The instructions already advised the jury that the firearms charge in Count Two required proof that he committed the crime of possession with intent to distribute cocaine base as charged in Count One, and that he possessed the firearms in furtherance of that crime. R. Doc. 84, at 25. There is no reason to believe that the jury convicted Owens under Count Two based on his furthering some other drug trafficking crime mentioned in the supplemental instruction for which there was no evidence. *Cf. Griffin v. United States*, 502 U.S. 46, 59-60 (1991).

D.

Owens next contends that two of his convictions are not supported by sufficient evidence. Taking the evidence in the light most favorable to the verdict, we consider

whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *United States v. El Herman*, 583 F.3d 576, 579 (8th Cir. 2009); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Owens challenges his conviction under 18 U.S.C. § 924(c) for possession of firearms in furtherance of a drug trafficking crime. The firearms at issue were a nine millimeter handgun and a .357 caliber revolver, both found in the basement of the residence. The underlying drug crime was possession of crack cocaine with intent to distribute, based on drugs also found in the basement. To secure a conviction under § 924(c), the government was required to show that the defendant possessed a firearm and did so to advance his drug trafficking crime. The evidence must establish "a nexus between the defendant's possession of the firearm and the drug offense." *United States v. Hamilton*, 332 F.3d 1144, 1150 (8th Cir. 2003).

Owens asserts that the evidence is insufficient because there was no proof that he carried a firearm during a drug transaction or that he handled the two firearms recovered from the house. There was other evidence, however, that Owens possessed the guns and did so in furtherance of his drug trafficking crime. The guns were found in the basement of Owens's residence, and Owens told police that his wife "had nothing to do with anything." So it was reasonable to infer that the guns belonged to him, and that he constructively possessed them.

The guns and ammunition were located near quantities of crack cocaine suitable for distribution, four digital scales, packaging material, and a money counter. The government presented expert testimony that drug traffickers typically possess firearms "for the safety of themselves, their product, and their proceeds of their drug sales." The proximity of the guns and ammunition to cocaine and to other items associated with drug trafficking supports a reasonable inference that Owens possessed the firearms to further his drug trafficking offense. There was sufficient evidence to support the conviction.

-10-

Owens also argues that the government presented insufficient evidence to support a conviction of unlawful possession of a firearm as a previously convicted felon. *See* 18 U.S.C. § 922(g)(1). In light of *Rehaif*, the government was required to prove that Owens knew when he possessed a gun that he previously had been convicted of a crime punishable by more than a year in prison. Owens contends that the record at trial is insufficient on this element. Owens made general motions for judgment of acquittal at the close of the government's case and at the close of all evidence. R. Doc. 114, at 170, 173. Because he did not raise specific grounds that implicitly excluded others, *cf. United States v. Samuels*, 874 F.3d 1032, 1036 (8th Cir. 2017), we will assume for the sake of analysis that the general motions were sufficient to preserve a sufficiency challenge on the knowledge element. *See United States v. May*, 476 F.3d 638, 640 (8th Cir. 2007); *United States v. Staggers*, 961 F.3d 745, 754 (5th Cir. 2020); *United States v. Maez*, 960 F.3d 949, 958-59 & n.6 (7th Cir. 2020).

Given the prevailing law at the time, the government's evidence at trial about Owens's knowledge was limited to a stipulation of the parties that Owens "had sustained at least one felony conviction for which he could receive a term of imprisonment greater than one year." R. Doc. 114, at 160. Although the evidence was slender, we conclude that it was legally sufficient to establish knowledge and sustain the conviction. Rational jurors, using reason and common sense in light of their own observations and experiences, could infer beyond a reasonable doubt that a felony conviction would be a significant life event that a person would know about when it happened and remember at a later date. Generally speaking, "it is highly improbable that a person could be convicted of a felony without being aware that his possible sentence would exceed one year's imprisonment." *Miller*, 954 F.3d at 559. We thus conclude that Owens's conviction for unlawful possession of a firearm was supported by sufficient evidence. *Accord Staggers*, 961 F.3d at 757.

III.

Owens raises two challenges to his sentence. First, he contends that the district court erred in applying a two-level specific offense characteristic under USSG § 2D1.1(b)(12) for a defendant who "maintained a premises for the purpose of manufacturing or distributing a controlled substance." The district court adopted the recommendation of the probation office, which concluded that "one of the residence's primary or principal uses was to assist the defendant in distributing and storing drugs." R. Doc. 91, at 21; *see* R. Doc. 116, at 5. We review the court's factual findings for clear error and its interpretation of the guidelines *de novo*. *United States v. Sesay*, 937 F.3d 1146, 1153 (8th Cir. 2019).

The guideline commentary explains that this two-level increase applies to a defendant who "knowingly maintains a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." USSG § 2D1.1 comment. (n.17). The court should consider "whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises," and "the extent to which the defendant controlled access to, or activities at, the premises." *Id*. The commentary further provides that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises." *Id.*

Owens argues that he held no possessory interest in the house, but the evidence to the contrary is sufficient to sustain the district court's finding. In May 2015, several months before the search, Owens reported an automobile accident to police and gave the house on Montgall Avenue as his address. During the search of the house, officers found a bill from Missouri Gas Energy addressed to Owens at the Montgall Avenue address. After the search, when Owens was transported to the police station, he told the officers that he lived at the residence with his wife and children.

-12-

Owens also claims that distribution of drugs was not one of the "primary purposes" for which he maintained the house. The record contained ample evidence to support the district court's finding to the contrary. Officers saw Owens depart the house immediately before selling drugs to an undercover officer on three occasions. Investigators found quantities of crack cocaine suitable for distribution in two rooms of the house. The basement, in particular, stored extensive evidence of drug distribution: nearly forty grams of cocaine base, approximately 100 baggies, a money counter, four digital scales, and two handguns. Consistent with this evidence, the district court found that "the main thing that was going on down . . . in the basement . . . was a drug premises." R. Doc. 116, at 5. Owens points out that none of the undercover drug buys took place at the house, but a transaction on the premises is not a prerequisite for applying the specific offense characteristic. There was no clear error in applying the two-level increase.

Second, Owens maintains that the district court imposed an unreasonable sentence when it varied upward from the advisory range of 152 to 175 months' imprisonment to a term of 220 months. A sentence must be reasonable with regard to the factors set forth in 18 U.S.C. § 3553(a). We review reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "We may consider the extent of any deviation from the guideline range, *id.* at 47, but *Gall* forbids requiring proportional justifications for variances from the range, and even extraordinary variances do not require extraordinary circumstances." *United States v. Johnson*, 916 F.3d 701, 703 (8th Cir. 2019).

In explaining its decision, the district court cited Owens's prior sentence for murder and observed that he violated prison rules fifty-seven times while serving twenty-two years of his term in Missouri. The violations included rioting, assaultive behavior, physical struggle, fighting, theft, intoxicating substance possession, creating a disturbance, and disobeying an order. The court thus expressed concern about Owens's respect for the rule of law. The court also remarked that while there were

-13-

some positive things going on in Owens's life, "much of it is clouded with putting poison in the community," and cited the need for deterrence and protection of the public. In sum, the court concluded that the guidelines were "too low on this case" and did not "adequately account for this behavior, and all those other factors."

Owens complains that the court put too much weight on his criminal history and too little weight on the "non-violent" nature of his crime. District courts, however, have "wide latitude to weigh the § 3553(a) factors in each case and to assign some factors greater weight than others." *Johnson*, 916 F.3d at 703 (internal quotation omitted). Owens's offense conduct, criminal history, and prison conduct were appropriate factors for the court to consider, and it was permissible for the court to view Owens's drug trafficking, even if "non-violent," as a serious offense that put "poison in the community." We conclude that the court did not commit a clear error in judgment in fashioning a sentence.

*      *      *

The judgment of the district court is affirmed.

_____