# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-1096

_____

United States of America

*Petitioner - Appellee*

v.

Darius Sledge, also known as Ace, also known as Man Man, also known as Frank, also known as Frank Love, also known as Gary, also known as Bill

*Defendant - Appellant*

_____

No. 23-1099

_____

United States of America

*Plaintiff - Appellee*

v.

Baquan Sledge, also known as Sledge, also known as Rell, also known as TJ, also known as Matthew Pierce

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: March 12, 2024
Filed: July 16, 2024
_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Darius Sledge and Baquan Sledge were indicted on five counts stemming from their participation in, and leadership of, a drug distribution conspiracy in North Dakota. Following a jury trial, Baquan was found guilty on all counts, and Darius on all but one. Both now appeal, asserting various points of error. Having jurisdiction under 28 U.S.C. § 1291, we reverse Darius's continuing criminal enterprise conviction and remand for a new trial, remand to the district court on Baquan's drug conspiracy conviction, but affirm the judgments in all other respects.

I.

This case arises out of a wide-ranging conspiracy to distribute oxycodone pills in North Dakota. Beginning in 2015, Baquan led Darius and others in establishing a pill distribution network targeting the Turtle Mountain, Fort Berthold, and Spirit Lake Indian Reservations. Transporting thousands of pills at a time from Michigan, the group recruited local residents in North Dakota as sub-distributors, stayed at their homes, and compensated them by paying rent or phone bills. The scale of the operation was substantial. Baquan and Darius would make between 15 and 20 trips each year. Baquan was known to carry a gallon-sized plastic bag containing up to 10,000 pills at a time, with each pill selling for between $40 and $80. Proceeds were physically transported back to Michigan or sent to family members via electronic money transfers. Despite being arrested in October 2019, Baquan continued his involvement in the operation by calling Darius from jail. Darius was arrested the next year.

A grand jury charged Darius and Baquan with five counts: (1) conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; (2) money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) and (a)(1); (3) possession with intent to distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; (4) maintaining a drug-involved premises, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2; and (5) continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848(a) and (c).

In the year preceding Darius and Baquan's joint trial, the United States Marshals Service relocated Baquan from a North Dakota correctional facility to a facility in Colorado. Alleging that the new thousand-mile distance from his attorney prejudiced his defense, in violation of his Sixth Amendment right to counsel, Baquan moved the district court to order his return to North Dakota. Two months later, the district court held a hearing on the motion. Baquan acknowledged that, since filing his motion, he had been returned to a facility within North Dakota. Because the Marshals Service communicated to the district court its intent to keep Baquan in North Dakota until his case was resolved, the district court denied the motion as moot.

The joint trial began six months later. Dozens of witnesses testified, and hundreds of exhibits were entered into evidence. We therefore recount the facts of the trial only to the extent necessary to dispose of the issues raised on appeal. During trial, the district court admitted into evidence text messages, photographs, and videos from the phone of unindicted coconspirator Kevon Savage. The photographs and videos showed, among other things, Savage and Darius with large amounts of money and pills. During trial, counsel for Baquan complained that the Government was listening to his client's jail phone calls. He conceded, "Certainly the government has a right to do that," but protested that it was "dirty." The jury ultimately returned a guilty verdict on all counts, except for the distribution of oxycodone count as to Darius.

Three months after the verdict, an alternate juror contacted Baquan's counsel to provide text messages between herself and a second juror, wherein they discussed that a third juror, L.O., had once mentioned that his daughter had "ODed" on "pills." Darius and Baquan jointly moved for a new trial and evidentiary hearing based on claims of juror bias or misconduct, asserting that L.O. "purposefully refused to volunteer critical . . . information" during voir dire and "ke[pt] . . . secret" his daughter's alleged overdose. The district court denied the motions.

The district court ultimately sentenced Darius to 360 months' imprisonment on the CCE count and 240 months' on his remaining three, all running concurrently. The district court also sentenced Baquan to 360 months' imprisonment on the CCE count and 240 months on his remaining four, all running concurrently.

II.

We begin with Darius's challenge to his CCE conviction based on an alleged error in the jury instructions. To establish a CCE violation, the Government must prove that the defendant committed:

1) a felony violation of the federal narcotics laws;

2) as part of a continuing series of three or more related felony violations of federal narcotics laws;

3) in concert with five or more other persons;

4) for whom [the defendant] is an organizer, manager or supervisor; [and]

5) from which [the defendant] derives substantial income or resources.

United States v. Lee, 687 F.3d 935, 940 (8th Cir. 2012) (second alteration in original) (citation omitted). Relying on the Supreme Court's decision in Richardson v. United States, 526 U.S. 813 (1999), Darius asserts that the district court was required to

-4-

instruct the jury that it must unanimously agree as to which three predicate felonies constituted the "continuing series." Because the jury did not receive this specific unanimity instruction, and because the jury found him guilty of only *two* predicate felonies, Darius asserts that we cannot know if the jury unanimously agreed which three he committed, as Richardson requires.[1]

### A.

As a threshold matter, we must first address the appropriate standard of review. "We typically review a challenge to jury instructions for an abuse of discretion. Where a party fails to timely object to an instruction at trial, however, we review only for plain error." United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011) (citation omitted).

Darius asserts that he "properly objected" to the jury instructions on this issue at trial. We disagree. "An objection must be timely and clearly state the grounds." United States v. Burrage, 951 F.3d 913, 916 (8th Cir. 2020). Here, when discussing the proposed final instructions with the district court and the Government, counsel for Darius did not object to the lack of a specific unanimity instruction. Rather, counsel stated that "the felony violations of federal controlled substance laws should be explained to the jury and set forth; in other words, that . . . these two felony

---

[1]Darius does not clearly frame his argument in these terms. He variously states that his "challenge here [on appeal] is not based upon a result reached by the jury"; that "the faulty instruction divested [him] of a defense"; that "the incorrect jury instruction violated his constitutional right to a full and fair trial"; that the instructional flaw violated his Sixth and Seventh Amendment rights to a unanimous verdict; and that the instructional flaw violated his Sixth and Fourteenth Amendment rights to notice of the charges against him. Although courts "should not[] sally forth each day looking for wrongs to right," Greenlaw v. United States, 554 U.S. 237, 244 (2008) (citation omitted), because Darius's reply brief mostly refocuses on his claim that there was an "obvious error in the" CCE instructions, we construe his otherwise sprawling argument as raising an alleged error in the jury instructions based on Richardson.

violations have occurred beyond a reasonable doubt within that continuing criminal enterprise." Counsel later clarified, "for purposes of the record," that the CCE "instruction[s] should make it clear . . . what . . . federal controlled substance law[s] were violated." Thus, even after clarifying his point, counsel failed to clearly state that a unanimity instruction was required.

While it is true that Darius filed "Proposed Jury Instructions and/or Objections to the Court's Preliminary Proposed Jury Instructions" one month before these final jury instruction discussions, Darius therein stated that he had no objections to the proposed instructions "except those which conflict with other instructions set forth below." The "instructions set forth below" appear to be a near verbatim recitation of Eighth Circuit model CCE jury instructions, which contain a specific unanimity instruction. But even if we charitably assume that this constituted the tender of a specific unanimity instruction, "[t]he mere tender of an alternative instruction without objecting to some specific error . . . or explaining why the proffered instruction better states the law does not preserve the error for appeal." United States v. Weckman, 982 F.3d 1167, 1175 (8th Cir. 2020) (citation omitted). Here, Darius did neither. Therefore, because Darius did not clearly state that a specific unanimity instruction was required when discussing the final proposed instructions, we review for plain error. See Burrage, 951 F.3d at 916.

In so holding, we reject the Government's alternative argument that Darius waived his objection by inviting the alleged error. "When a party expressly agrees to an instruction, the doctrine of invited error applies, and any objection to the instruction is waived." United States v. Davis, 826 F.3d 1078, 1082 (8th Cir. 2016). But the Government points us to no portion of the record in which Darius expressly *agreed* to the lack of a specific unanimity instruction. Nor does the Government offer any supporting legal authority for its claim that Darius invited the error by rejecting its proposed special verdict form which listed predicate felonies.

Likewise, we reject Darius's alternative argument that de novo review applies. "[A]lthough district courts exercise wide discretion in *formulating* jury instructions,

when the refusal of a proffered instruction simultaneously denies a legal defense, the correct standard of review is de novo." United States v. Bruguier, 735 F.3d 754, 757 (8th Cir. 2013) (en banc) (alteration in original) (citation omitted). Darius asserts "that the faulty instruction divested [him] of a defense, namely arguing to the jury which of the three felonies had not been proven . . . ." But Darius did not proffer a specific unanimity instruction when discussing the final proposed instructions, and the district court expressly told counsel that "in their closing arguments" they could "argue about what constitutes the three or more related felony convictions of a federal controlled substance law and why that burden hasn't been met by the government."

## B.

"To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Poitra, 648 F.3d at 887.

## 1.

Here, we conclude that the district court's failure to issue a specific unanimity instruction was an error that is clear or obvious under current law. In Richardson, the Supreme Court held that "a jury has to agree unanimously about which specific violations make up the 'continuing series of violations'" required by the CCE statute. 526 U.S. at 815. And in United States v. Jefferson, we all but confirmed that a trial court errs when it fails to issue a specific unanimity instruction. 215 F.3d 820, 823 (8th Cir. 2000). There, when analyzing the defendants' claim that there was an error in the CCE jury instructions, we held that:

> [W]ith one exception, the district court correctly instructed the jury. Although the district court failed to instruct the jury that it must

-7-

> unanimously agree on which three or more acts constitute the "series of violations" requirement in the CCE [statute], the omission was harmless . . . because the jury convicted [the defendants] of more than three predicate federal narcotics offenses.

Id. (quoting Richardson, 526 U.S. at 824). While not explicit, this holding necessarily implies that the district court erred when it failed to give a specific unanimity instruction, which, in turn, necessarily implies that one was required.

The Government's counterargument that another instruction described some felonies that *could* make up the series is unavailing, for it says nothing about unanimity. So too with the Government's argument that the instructions were consistent with the Model Jury Instructions for the Eighth Circuit. The Model Instructions are "not binding on the district courts," and so consistency with them is not dispositive. United States v. Owens, 966 F.3d 700, 705 (8th Cir. 2020) (citation omitted). Moreover, the Model Instructions include a specific unanimity instruction. See Eighth Circuit Manual of Model Jury Instructions (Criminal) 6.21.848A (2023). In short, we conclude that, under current law, the district court's failure to issue a specific unanimity instruction was an error that is clear or obvious.

2.

Presumably because he does not believe that plain error applies, see supra Section II.A., Darius does not expressly argue whether this instructional error "affected [his] substantial rights, [or whether] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Poitra, 648 F.3d at 887. "In order to affect substantial rights, the error must have been prejudicial." United States v. Rush-Richardson, 574 F.3d 906, 911 (8th Cir. 2009) (citation omitted) (analyzing a plainly erroneous jury instruction). "The defendant's burden is to 'satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'" Id. (citations omitted).

Here, the probability of a different result is sufficient to undermine our confidence in the outcome of the proceedings.  As Darius repeatedly emphasizes, the jury found him *not* guilty of possession with intent to distribute oxycodone.  As for the remaining charges, the jury found Darius guilty of conspiracy to distribute or possess with intent to distribute a controlled substance, maintaining a drug-involved premises, and money laundering conspiracy.  The Government does not suggest that the money laundering conspiracy is a predicate "felony violation[] of federal narcotics laws."  Lee, 687 F.3d at 940; United States v. Brown, 202 F.3d 691, 700 (4th Cir. 2000) (holding that money laundering cannot be a predicate offense under the CCE statute).  But that leaves only *two* predicate felonies that we know the jury unanimously agreed upon, not *three*: the drug conspiracy count and the maintaining a drug-involved premises count.  In essence, the fact that Darius was charged with three predicate felonies but found guilty of only two is powerful evidence that, had the jury been properly instructed, it may have returned a not-guilty verdict on the CCE count.

The Government argues that this is inconsequential because the jury instructions explained that "felony violations of federal controlled substance laws may be any or all of the following offenses: possession of oxycodone with intent to distribute, distribution of oxycodone, and maintaining a drug premise[s]," and because the Government argued the specific unanimity requirement during closing arguments.  It proposes that the jury could have found one of these three felonies as the requisite third predicate offense. We disagree.  The jury found Darius not guilty of that first proposed extra felony: possession with intent to distribute oxycodone.  As for the second, distribution of oxycodone, Darius was never charged with that crime, and so the jury rendered no relevant verdict from which we could glean their unanimity.  And, absent any contrary indications in the record, it is difficult to speculate that the jury unanimously agreed that Darius distributed oxycodone but—per the verdict—did not possess it with intent to distribute it.  See Lanier v. United States, 220 F.3d 833, 840 (7th Cir. 2000) (analyzing the defendant's challenge to his CCE conviction and concluding that "the jury could not have found

[him] guilty of distribution without also finding him guilty of possession with intent to distribute").

Turning to the third proposed extra felony, we are not persuaded by the Government's speculation that the jury must have unanimously found Darius guilty of an additional uncharged count of maintaining a drug-involved premises. When arguing that any instructional error was harmless,[2] the Government states—without appropriate citations to the record[3]—that six witnesses testified to housing Darius for the purpose of distributing pills. See 8th Cir. R. 28A(j) ("Citations to a document from a district court docket should include reference to the record, the document number, and page number of the document in the following form: R. Doc. 12, at 3."). But jurors may disagree about the "underlying brute facts" that constitute the offense conduct and still reach unanimity that a particular offense occurred. United States v. Johnson, 495 F.3d 951, 974-75 (8th Cir. 2007) (citation omitted). We would

---

[2]Although we need not analyze a plain error for harmless error, see Greer v. United States, 593 U.S. 503, 512 (2021) (differentiating the standards for plain- and harmless-error review and concluding "that unpreserved errors must be analyzed for plain error"), the inquiry between the two is "substantially similar," Ramirez-Burgos v. United States, 313 F.3d 23, 29 (1st Cir. 2002). Under both plain error and harmless error, "the ultimate inquiry requires a determination as to whether the error affected substantial rights, which in most cases means whether the error was prejudicial or affected the outcome of the district court proceedings." United States v. Patterson, 68 F.4th 402, 421 n.4 (8th Cir. 2023) (citation omitted); see United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc) ("The defendant has the burden of proving plain error, whereas the government has the burden of proving harmless error."). We therefore construe the Government's argument that the instructional error was harmless as an argument that it did not affect Darius's substantial rights.

[3]Elsewhere, the Government cites "See TT generally" for the proposition that it introduced substantial evidence at trial of Baquan's individual acts of drug distribution. We note that the trial transcript is 2,523 pages long, and we decline to search it for testimony favorable to the Government. United States v. Stuckey, 255 F.3d 528, 531 (8th Cir. 2001) ("Judges are not like pigs, hunting for truffles buried in [the record]." (citation omitted)).

therefore be engaging in pure speculation to say that the jurors *must* have unanimously agreed that Darius maintained a second drug-involved premises simply because the Government put on some evidence that he maintained more than one.

Nor are the Government's remaining harmless error arguments persuasive. The Government goes on to state—this time without *any* citation to the record—that "[t]here was also substantial testimony on distribution of oxycodone by Darius." The Government then claims that "[t]he jury observed still images of video surveillance of Darius with Kevon Savage [at a location] where Kevon Savage was later found in possession of a deliverable amount of pills." Finally, the Government states that "[t]he jury also saw text messages and photographs corroborating Darius' acts of distribution," although it does not explain what those text messages say, what the photographs show, what the specific "acts of distribution" were, or *how* that evidence corroborates the claim that Darius engaged in those acts. These perfunctory, undeveloped assertions—lacking proper citations to the record—do not persuade us that Darius failed to identify an error affecting his substantial rights. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders." (citation omitted)).

3.

Finally, we conclude that the instructional error in this case "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Poitra, 648 F.3d at 887. Darius was sentenced to 360 months' imprisonment on the CCE count, but only to 240 months' imprisonment on the remaining three, all to run concurrently. Therefore, because Darius received an additional 120 months' imprisonment on a count for which he may not have been found guilty were the jury properly instructed, we hold that the fairness, integrity, and public reputation of the proceedings were seriously affected. See United States v. Lara-Ruiz, 721 F.3d 554, 559 (8th Cir. 2013) (holding that "the fairness and integrity of the judicial proceedings . . . were affected by the expansion of [the defendant's] loss of liberty resulting from [an] erroneous increase in the mandatory minimum sentence, without the requisite jury finding");

-11-

cf. Pirani, 406 F.3d at 553-54 (explaining that our Circuit's prior "decisions reflect proper concern that the fairness, integrity, and public reputation of judicial proceedings are seriously affected when a defendant must spend additional time in prison on account of an illegal sentence").

We therefore conclude that Darius has identified a plain error in the district court's CCE jury instructions. Accordingly, we reverse Darius's CCE conviction and remand for a new trial. Because we reverse Darius's CCE conviction, we decline to consider his alternative arguments that the jury instructions were deficient in failing to name the five other persons he was alleged to have supervised, and that there was insufficient evidence presented at trial to prove he derived "substantial income" from the enterprise.[4] However, the Government recognizes that "a drug conspiracy violation of 21 U.S.C. § 846 is a lesser included offense of a CCE violation of 21 U.S.C. § 848." Johnson, 495 F.3d at 980. While we need not address this concession as to Darius—given that we reverse his CCE conviction—it must still be addressed as to Baquan. We remand to the district court on Baquan's drug conspiracy count so that it may vacate the lesser-included conviction. See id. at 981 (doing the same).

III.

Darius and Baquan both challenge the admission into evidence at trial various text messages, videos, and photographs obtained from the cellphone of unindicted

---

[4]Baquan also argues that there was insufficient evidence to establish the second, third, fourth and fifth elements of his CCE conviction. He does so without citation to legal authority, however, and with only two citations to the record—citations which direct us to his motion for judgment of acquittal and the district court's order dismissing it. The argument section of that motion also contains no citations to legal authority. Accordingly, we consider Baquan's challenge to the sufficiency of the evidence waived. See United States v. Kalb, 750 F.3d 1001, 1005 (8th Cir. 2014) (holding that a claim on appeal was waived because it was not supported "with specific reasons, citations to the record, or relevant legal authority" (citation omitted)).

coconspirator Kevon Savage. The district court admitted the challenged evidence under Federal Rule of Evidence 801(d)(2)(E), which provides that statements made by a defendant's coconspirator during and in furtherance of the conspiracy are not hearsay. Darius and Baquan's arguments challenging the admission of this evidence have no merit.

Darius argues that the admission of the evidence violated his Confrontation Clause rights. But "co-conspirators' statements made in furtherance of a conspiracy and admitted under Rule 801(d)(2)(E) are generally non-testimonial and, therefore, do not violate the Confrontation Clause." United States v. Mayfield, 909 F.3d 956, 962 (8th Cir. 2018) (citation omitted). Significantly, Darius does not argue that any statements introduced into evidence from Savage's phone were not made in furtherance of the conspiracy. Darius's attempt to "factually distinguish[]" Mayfield is also meritless. We also reject as meritless Baquan's argument that the district court "improperly ignored the dictates of Crawford [v. Washington, 541 U.S. 36 (2004)]" by applying Mayfield. Mayfield is a binding decision in our Circuit, and it repeatedly discussed Crawford. 909 F.3d at 962; Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." (citation omitted)). Finally, we decline to consider Baquan's conclusory statement that the district court erred in finding that Savage was in fact a coconspirator—another assertion presented without citations to the record or legal authority.

IV.

Darius and Baquan next argue that the district court abused its discretion when denying their motion for a new trial and evidentiary hearing based on their claims of juror bias or misconduct. The "[h]onesty of the juror and actual bias are factual issues" reviewed for clear error, but "[t]he ultimate determination of whether a new trial is required is reviewed for abuse of discretion." United States v. Ruiz, 446 F.3d 762, 770 (8th Cir. 2006) (citations omitted). We conclude that the district court did

-13-

not abuse its discretion in denying Darius and Baquan a new trial or evidentiary hearing.

> Pursuant to <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984), a party seeking a new trial on the basis of concealed juror bias must prove three things: (1) that the juror answered dishonestly, not just inaccurately; (2) that the juror was motivated by partiality; and (3) that the true facts, if known, would have supported striking the juror for cause.

<u>Ruiz</u>, 446 F.3d at 770. Here, after carefully reviewing the voir dire transcript, the district court concluded that "[n]either the Court, the Government, nor defense counsel ever asked a specific question, a direct question, or an indirect question to [L.O.] about he or his immediate family members having any issues with opioids, addiction, or overdoses." Accordingly, the district court concluded that L.O. never answered any material question dishonestly. <u>Id.</u>; <u>see also</u> <u>McDonough Power</u>, 464 U.S. at 556 ("[T]o obtain a new trial . . . , a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire . . . .*").

The district court did not clearly err in reaching this conclusion, and it therefore did not abuse its discretion in denying the motion. At voir dire, the district court asked potential jurors whether they may be prejudiced or biased against the Government or Defendants "simply because of the type of charges that are brought in this case." The district court explained that "[t]hese are drug charges" and asked if there was "anything . . . involving drug offenses that raises concerns in your mind about serving as a juror?" One juror—not L.O.—answered affirmatively, but no others did. The court asked each juror to individually "share just a little bit of information about [themselves]," and L.O. obliged. He mentioned his prior work, being retired, his children, and his hobbies. The Government later asked the potential jurors if "anyone had a family member, a close friend who struggled with addiction?" The Government indicated that it saw "a few responses" and that it "may" come back to some of them. The Government asked another juror—not L.O.—about her answer to that question but came back to no others. Defense

-14-

counsel questioned the potential jurors but asked no follow-up questions about family histories of drug addiction or related topics. Based on the foregoing, we cannot say the district court clearly erred in concluding that L.O. never dishonestly answered a material question.

The district court also denied Darius and Baquan's request for an evidentiary hearing, concluding that inquiry into intra-jury communications between L.O. and other jurors would violate Federal Rule of Evidence 606(b), that no exception to Rule 606(b) applied, and that a hearing was unwarranted given that Darius and Baquan did not carry their burden under the McDonough Power framework. Because we agree that Darius and Baquan failed to carry their burden under the McDonough Power framework, we find no abuse of discretion in the district court's denial of the motion for an evidentiary hearing. See United States v. Tucker, 137 F.3d 1016, 1029 (8th Cir. 1998) (holding that the defendant's "sufficient showing of a McDonough claim . . . entitle[d] him to a hearing"). We decline to consider Baquan's remaining arguments pertaining to Rule 606(b).

V.

Baquan argues that the district court erred in denying as moot his motion for placement in North Dakota. In that motion, Baquan asserted that by being moved from a custodial facility in North Dakota to Colorado pending trial—many miles from his attorney—his Sixth Amendment right to counsel was violated. He asserts on appeal that the appropriate remedy for this alleged constitutional violation is vacatur of his conviction. We review a claim of a violation of the right to counsel de novo. United States v. Harris, 964 F.3d 718, 722 (8th Cir. 2020). Upon de novo review, we conclude that there was no violation of Baquan's Sixth Amendment right to counsel. "A defendant establishes a Sixth Amendment violation if (1) 'the government knowingly intruded into the attorney-client relationship,' and (2) 'the intrusion demonstrably prejudiced the defendant, or created a substantial threat of prejudice.'" United States v. Sawatzky, 994 F.3d 919, 923 (8th Cir. 2021) (citation omitted). In his motion below, Baquan did not argue any *knowing* intrusion by the

-15-

Government. Indeed, he conceded that "the U.S. Marshal[s] Service is the legal custodial entity which determines housing Defendants pre-trial" and that "legally in general he has no right to demand a specific housing location." He also conceded that the Marshals Service's motivation was probably its "own placement and budget concerns," and that he was not accusing them of "acting maliciously." These concessions obviate any argument on appeal that the Government "knowingly intruded" into his attorney-client relationship.

## VI.

Finally, Baquan argues that the Government engaged in prosecutorial misconduct by listening to his jailhouse calls throughout trial, which he asserts denied him a fair trial and warrants vacatur of his convictions. Baquan failed to properly preserve an objection to this conduct because he did not precisely state the grounds for his objection and conceded that the conduct was legally permitted. Framing his comments at trial as "more of a request than a motion," counsel for Baquan stated, "Yeah, they have a right to do it. Knock themselves out, but I really think it's dirty, and I would request that they cease doing so, if anything, just out of the consciousness of fair play." We therefore review for plain error. See United States v. Davis, 534 F.3d 903, 914 (8th Cir. 2008).

"Prosecutorial misconduct can result in the reversal of a conviction if (1) the prosecutor's conduct or remarks were improper, and (2) the conduct or remarks prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." Id. But when an inmate has impliedly consented to his calls being recorded by making the calls despite being informed that they are recorded, there is no prosecutorial misconduct. See United States v. Morin, 437 F.3d 777, 780 (8th Cir. 2006). On appeal, Baquan points to nothing in the record rebutting testimony at trial that inmates were told their calls are recorded. We therefore find no plain error in the district court's decision to take no action with respect to Baquan's "request" on this matter.

-16-

## VII.

For the foregoing reasons, we reverse Darius's CCE conviction and remand for a new trial on this count, remand to the district court on Baquan's drug conspiracy conviction, and affirm the judgments in all other respects.

_____